## DETROIT STEEL PRODUCTS CO. *v.* HEUER.

CORPORATIONS—VOLUNTARY DISSOLUTION—RECEIVERS—FRAUD—SET-
TING ASIDE PROCEEDINGS FOR VOLUNTARY DISSOLUTION.
> In a suit in the interest of stockholders and creditors of
> a corporation to set aside proceedings had for its volun-
> tary dissolution, where it appeared that the real estate of
> the corporation was sold for much less than its actual
> value, and that the receiver profited thereby, the decree
> of the court below in favor of plaintiffs was justified.[1]

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted June 17, 1925.   (Docket No. 71.)   De-
cided July 16, 1925.

Bill by the Detroit Steel Products Company and
others against Albert R. Heuer, individually and as
receiver of the Concrete Products & Supply Company,
and others to set aside proceedings had to dissolve a
corporation, and for an accounting.   From a decree
for plaintiffs, defendants appeal.   Affirmed.

*Bresnahan & Groefsema,* for plaintiffs.

*Ignatius J. Salliotte,* for defendants.

MOORE, J.   The Concrete Products & Supply Com-
pany, a Michigan corporation, was, prior to the 18th
day of August, 1922, the owner of real estate in the
city of River Rouge.   The business of the corpora-
tion was that of manufacturing cement blocks.   On
the 18th of August, 1922, a petition for voluntary dis-
solution was filed under sections 13563-13570, 3 Comp.
Laws 1915, inclusive.   On the 28th day of October,
1922, an *ex parte* order was entered appointing Albert

---

[1]Corporations, 14a C. J. § 3764; Receivers, 34 Cyc. p. 254.

R. Heuer, one of the defendants in this case, receiver of said corporation. On the 2d day of February, 1923, Mr. Heuer filed a petition for leave to sell all of the assets of the corporation. On March 1, 1923, Albert R. Heuer as receiver conveyed all of the real estate of the company to George V. Garner, another of the defendants in this case. The consideration was stated to be $4,800. At that time the property was subject to a mortgage in the process of foreclosure. This mortgage was owned by Albert L. Montie and his wife. The period of redemption on this foreclosure expired on March 2, 1923. On the 28th day of February, 1923, a quitclaim deed was executed by the mortgagees to Mr. Garner. A decree of dissolution was entered on the 20th day of December, 1923. Other proceedings were had which it is not necessary to recite here.

The bill of complaint in the instant case was filed for the purpose of setting aside all the proceedings had to dissolve said corporation, and also for the purpose of declaring null and void all of the doings of Albert R. Heuer as receiver of said corporation. It was further the purpose of the bill to regain for the corporation, for the benefit of the stockholders and creditors, the assets of the company and especially the real estate. The plaintiffs are stockholders and creditors of the Concrete Products & Supply Company and the principal defendants are Albert R. Heuer as receiver; Albert R. Heuer, individually; Herman Goldnitz and George Garner. The corporation was made a party defendant as well as the directors. The bill also asks for an accounting by Albert R. Heuer as receiver, and prays for the appointment of a temporary receiver to take charge of the property.

The decree provided:

(1) That the receiver's deed from Albert Heuer, as receiver, to George V. Garner be set aside and held null and void. (2) That the quitclaim deed from

George V. Garner to Albert R. Heuer individually and Herman Goldnitz, be decreed to be null and void. (3) That the quitclaim deed from Albert L. Montie and wife to George V. Garner be decreed to be in legal effect a discharge of the mortgage lien and efficacious for that purpose only.   The sum of $2,435.65 was ordered to be paid by plaintiffs, the Concrete Products & Supply Company or its receiver to defendants Albert R. Heuer, George V. Garner and Herman Goldnitz, the same being for the sums expended by them on the real estate, less the amount of revenues derived therefrom while in their possession.   The decree also gave said parties a lien on the real estate for that sum.   It decreed the Concrete Products & Supply Company to have good title to said real estate in fee simple as against Heuer, Garner and Goldnitz.

The case is brought into this court by the appeal of Mr. Heuer, Mr. Goldnitz and Mr. Garner.

The record discloses that, when Mr. Heuer was appointed receiver, the real estate was appraised as of the value of $7,000.   One of the appraisers was the defendant Mr. Goldnitz.   Upon the trial Mr. Heuer, Mr. Goldnitz and Mr. Garner were called as witnesses under the statute.   Mr. Heuer testified that a fair value of the real estate when it was sold was $7,000, that it was sold to the highest bidder, Mr. Garner, for $4,800.   The bid was paid as follows: Mr. Heuer and Mr. Goldnitz gave their joint note to the Rouge State Bank for $3,000, and a cashier's check was issued for the same amount payable to the order of A. R. Heuer, receiver.   Mr. Heuer and Mr. Goldnitz were both stockholders in the bank.   Mr. Goldnitz was a director.   Mr. Goldnitz met Mr. Garner on the street and delivered to him the cashier's check.   Mr. Garner delivered the check to Mr. Heuer as a payment of $3,000 as a part payment of the bid for the land, and Mr. Heuer trusted Mr. Garner for the balance of $1,800, and deposited the $3,000 check in the bank, and it was deposited to his credit as receiver.   A few days later Mr. Heuer as receiver drew his check of $2,820.25,

which was delivered to Mr. Montie, who had foreclosed his mortgage, just a few days before the redemption period would expire, and on February 28, 1923, a quitclaim deed was made by Mr. and Mrs. Montie to Mr. Garner.   On March 12, 1923, Mr. Garner made a quitclaim deed to Mr. Heuer and Mr. Goldnitz.

It is claimed by Mr. Heuer, Mr. Goldnitz and Mr. Garner that the consideration of the last mentioned deed was $5,500 and that Mr. Garner made $700 by his part in the transaction.   Mr. Heuer and Mr. Goldnitz were at this time partners in real estate deals, and they both admit the real estate was worth $7,000, while disinterested real estate men testified it was worth from $13,200 to $14,000.

It is the claim of Mr. Heuer, Mr. Garner and Mr. Goldnitz that Mr. Garner was the highest bidder, and that they all acted in good faith.   Mr. Garner testified he bought the property for himself, but admitted he told Mr. Bresnahan that he bought the property for Mr. Heuer.   Another witness testified that he told him the same thing.   It has already appeared that Mr. Garner never put a dollar of his own money into the transaction, but that the money was obtained from a bank in which Mr. Heuer and Mr. Goldnitz were stockholders upon their joint notes.   To permit such a transaction to succeed would be a travesty upon justice.   See 34 Cyc. p. 254, under title of Receivers, under the sub-title Personal Interest and Advantage.

The decree is affirmed, with costs to the appellees.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.